UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| BOB BAFFERT, and BOB BAFFERT RACING STABLES, INC., <br> Plaintiffs, <br> vs. <br> CHURCHILL DOWNS, INC., WILLIAM C. CARSTANJEN, and R. ALEX RANKIN, <br> Defendants. | Case No. 22-cv-0123-RGJ |

## PLAINTIFFS' MOTION TO DISQUALIFY TRIAL JUDGE

Plaintiffs Bob Baffert and Bob Baffert Racing Stables, Inc., by and through their attorneys Brewster & De Angelis, hereby file this motion requesting that the assigned judge to this cause, Hon. Rebecca G. Jennings, recuse, pursuant to 28 U.S.C. §§ 144 and 455. The plaintiffs submit that the Court's impartiality is in question because her husband, Michael Patrick Jennings,[1] and his firm, Commonwealth Alliances, are legislative agents employed by The Jockey Club. The Jockey Club has actively intervened publicly and litigiously in the litigation surrounding the Bob Baffert/Medina Spirit matter since the beginning of state and racing association action against Mr. Baffert. R. Alex Rankin, a named Defendant in this case, is a senior, influential member of the Jockey Club and serves as a Jockey Club Steward. The motion is brought on a good faith basis after a diligent investigation of the public record and not for "other advantage or litigation tactic."

---

[1] The Court has represented to the U.S. Senate that in the event any conflict would arise she would, "*evaluate recusal in cases involving . . . and any clients of my husband, Michael Patrick Jennings, or his firm Commonwealth Alliances.* I would also recuse myself in matters involving my family, close friends, and my own financial interests. Lastly, I will evaluate any other real or potential conflict, or relationship that could give rise to an appearance of conflict, on a case-by-case basis and determine appropriate action, with the advice of parties and their counsel, including recusal where necessary." *See* United States Senate Committee on the Judiciary, Questionnaire for Judicial Nominees, Public, https://www.judiciary.senate.gov/download/09/22/2017/jennings-sjq

1

As the Plaintiffs elaborate further below, the impartiality of the Court is in question, and the necessary remedy is a disqualification.

I. ARGUMENT AND AUTHORITIES

The letter and spirit of the twin provisions – 28 U.S.C. §§144 & 455 – are straightforward and compelling: "[w]hen the impartiality of a judge is *in doubt*, the appropriate remedy is to disqualify that judge from hearing further proceedings in the matter." Fed. Jud. Cntr. Manual on Judicial Disqualification 1 (2010) (emphasis added). 28 U.S.C. §455 provides:

> § 455. Disqualification of justice, judge or magistrate judge
>
> (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding *in which his impartiality might reasonably be questioned*.
>
> (b) He shall also disqualify himself in the following circumstances:
>
> (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;
>
> * * *
>
> (4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;
>
> (5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:
>
> (i) Is a party to the proceeding, or an officer, director, or trustee of a party;
> (ii) Is acting as a lawyer in the proceeding;
> (iii) Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;

    (iv) Is to the judge's knowledge likely to be a material witness in the proceeding.

 (c) A judge should inform himself about his personal and fiduciary financial interests, and make a reasonable effort to inform himself about the personal financial interests of his spouse and minor children residing in his household.

*Id.* (emphasis added). Disqualification is required when there is reason to believe that a judge's "impartiality might reasonably be questioned." *Id.* 28 U.S.C. §144 provides that:

> Whenever a party to any proceeding in a district court *makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice* either against him or in favor of any adverse party, *such judge shall proceed no further* therein, but another judge shall be assigned to hear such proceeding.

*Id.* (emphasis added). Under § 144 a judge must recuse himself if one of the parties alleges facts which a reasonable person would believe would indicate a judge has a personal bias against the moving party. *United States v. Story,* 716 F.2d 1088, 1090 (6th Cir.1983)(*see also Gen. Aviation, Inc. v. Cessna Aircraft Co.,* 915 F.2d 1038, 1043 (6th Cir. 1990)).

  Federal Courts have taken the view that "if there is to be a burden of disclosure, that *burden is to be placed on the judge* to disclose possible grounds for disqualification." *In re Kensington Intern. Ltd*, 368 F.3d 289, 313 (3rd Cir. 2004); see also *United States v. Bosch,* 951 F.2d 1546, 1555 n. 6 (9th Cir.1991) (stating that §455(a) "has a *de facto* disclosure requirement."); see also *Parker v. Connors Steel Co.,* 855 F.2d 1510, 1525 (11th Cir. 1988) (noting that if judge had made voluntary disclosure of conflict to parties, recusal motion could have been avoided). Indeed, a judge is required to inform "himself about his personal and financial interests." 28 U.S.C. §455(C). That duty is a continuing one, throughout the life of the case. *United States v. Greenspan*, 26 F.3d 1001, 1005-1006 (10th Cir. 1994). The statute thus places the judge under a self-policing obligation to recuse himself from a case where the proper legal grounds exist. *Liljeberg v. Health Servs.*

*Acquisition Corp.,* 486 U.S. 847, 867–68 (1988). Further, as also addressed in the Fed. Jud. Cntr. Manual, referencing the ruling in *Barksdale v. Emerick*, 853 F.2d 1359 (6th Cir. 1988), "… the 6th Circuit reversed (the lower court's finding that there had been a waiver of disqualification), noting that there is no disclosure 'on the record' and therefore no properly obtained 'waiver.'"

In the Sixth Circuit, "[t]he alleged bias must "stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *Youn v. Track, Inc.,* 324 F.3d 409, 423 (6th Cir. 2003) citing *United States v. Grinnell Corp.,* 384 U.S. 563, 583, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966).

> Extrajudicial conduct encompasses only "personal bias as distinguished from a judicial one, arising out of the judge's background and association and not from the judge's view of the law." "Personal" bias is prejudice that emanates from some source other than participation in the proceedings or prior contact with related cases.

*Id*. at 423 (citations omitted). Such extrajudicial considerations are "*all* to be evaluated on an *objective* basis, so that what matters is not the reality of bias or prejudice but its appearance." *Liteky v. United States,* 510 U.S. 540, 548, 114 S. Ct. 1147, 1154, 127 L. Ed. 2d 474 (1994). The party alleging extrajudicial conduct which results in personal bias must set forth in an affidavit.

> The facts in the affidavit must be accepted as true. The facts and reasons set out in the affidavit "must give fair and adequate support to the charge of a bent of mind that may prevent or impede impartiality of judgment." The legal standard requires the facts to be such as would "convince a reasonable man that a bias exists." A bias sufficient to justify recusal must be a personal bias "as distinguished from a judicial one," arising "out of the judge's background and association" and not from the "judge's view of the law."

*United States v. Story,* 716 F.2d 1088, 1090 (6th Cir. 1983)(citations omitted).

As alleged in the Affidavit of Clark O. Brewster attached hereto as Exhibit 1, the Court has failed to disclose a financial interest held by her spouse, Patrick Jennings, in the subject matter in

4

controversy or a party to the proceeding that can be substantially affected by the outcome of this matter. Judge Jennings has failed to disclose that she receives marital income from the lobbying efforts of her husband, Patrick Jennings, a lobbyist for The Jockey Club. Such facts, as more fully set out below and in the affidavit, would clearly cause a reasonable person to believe the judge has a personal bias against the moving party.

### (a) The Jockey Club has a clear interest in these proceedings.

Shortly following the Defendants' suspension in 2021, the New York Racing Association, Inc. (NYRA), took reciprocal action against Mr. Baffert, also without a hearing. Mr. Baffert filed a federal action in New York to enjoin NYRA's suspension.[2] The Jockey Club interjected itself into the litigation and filed an *Amicus* Brief in opposition to Mr. Baffert. As stated in The Jockey Club's *Amicus* Brief, it has a unique interest in litigation surrounding the *Medina Spirit* matter and reached its own verdict that Mr. Baffert is deserving of all the punishment that can be heaped on him by any political bodies or corporations with some claim to power over thoroughbred horse racing.

> The Jockey Club is the keeper of the American Studbook, and one of The Jockey Club's wholly-owned subsidiaries is 50% owner and managing partner of Equibase Company LLC, keeper of the official database of Thoroughbred racing. Considering the above, The **Jockey Club has a unique interest** in ensuring that when Thoroughbreds enter the breeding shed (where they determine the future of the breed through progeny), they do so with records uninfluenced by the effects of medication.

*See* Exhibit 2, *Amicus* Brief of The Jockey Club, Case No. 21-cv-3329, Dkt. No. 17 (emphasis added). The *Amicus* Brief was submitted in opposition to Mr. Baffert's Motion for Preliminary

---

[2] *Baffert v. The New York Racing Association,* USDC, EDNY, Case No. 21-cv-3329.

Injunction concerning the actions by NYRA to temporarily suspend him from Thoroughbred horse racing in the State of New York.[3] The Jockey Club unwaveringly supported NYRA's decision.

> In The Jockey Club's view, NYRA had no choice under the circumstances, created entirely by Mr. Baffert, which undermined public confidence in the treatment and well-being of the sport's equine and human athletes and the integrity of Thoroughbred racing and wagering.

*Id*. at p. 9. The Jockey Club was a strong advocate against the fundamental elements of a preliminary injunction as in this case. In support of NYRA's decision, The Jockey Club directed the Court to CDI's decision to suspend Mr. Baffert to validate NYRA's actions. *Id*. at Dkt. No. 17-5 and 17-6.

Additionally, through its wholly owned subsidiary, Jockey Club Technology Services, Inc., The Jockey Club controls "Blood Horse, LLC" as the majority owner.[4] Blood Horse, LLC publishes *Blood Horse Magazine,* a leading publication for the horse racing industry. Blood Horse Magazine has been a constant source of negative articles about Mr. Baffert to whip up public opinion against him and provide fodder for the Defendants' contention that he is a serial offender deserving of the most severe punishment. *See* Defendants' Exhibits: Dkt. Nos. 52-37 (DX-037); 52-38 (DX-038); 53-17 (DX-057); 53-36 (DX-076); 53-39 (DX-079); DX-121 and DX-134.[5] In fact, it was Blood Horse that announced one of the sanctions CDI levied against Baffert — the bar against Baffert-trained horses winning points for the Kentucky Derby. In doing so, the publication announced an opposition to Plaintiffs' position in this litigation: "Acting as a private property

---

[3] In the Baffert v. NYRA matter, the federal court granted a preliminary injunction preventing NYRA from summarily suspending Mr. Baffert without a hearing and/or for improper reasons.

[4] See Exhibit 3, Organizational Chart for The Jockey Club and its subsidiaries.

[5] The Court received DX-121 and DX-134 at the Hearing on February 2nd and 3rd.

owner, Churchill Downs Inc. barred Baffert from competing at its tracks through the middle of 2023, action taken by the track operator after *Medina Spirit* tested positive for the prohibited race day presence of betamethasone." PX 010 was received at the Hearing on February 2nd and 3$^{rd.}$

Mr. Jennings' employer, The Jockey Club, from which he derives substantial marital income, has already decided that the Plaintiffs are not entitled to the very relief they seek in this matter:

> [I]n order to protect the health and safety of the sport's participants and retain the public's confidence in the integrity of racing and wagering, racetrack governing officials should be entitled to suspend immediately a trainer or anyone else credibly responsible for the administration of medication resulting in a substance violation.

*See* Exhibit 2, *Amicus* Brief of The Jockey Club, Case No. 21-cv-3329, Dkt. No. 17, p. 9-10. This is a statement of policy conveyed to a court of law to prevent and obstruct the Plaintiffs' efforts to enjoin summary, unilateral suspensions by racetracks without a hearing. This policy statement is not limited to New York but clearly extends to all racetracks, including those in Kentucky.

Finally, one of the named Defendants, R. Alex Rankin, is not only an exclusive member but a "steward" leader of the organization during all times relevant in this matter, including the retention of Commonwealth Alliance in April of 2022. Exhibit 4, Jockey Club Elects Four New Members.

The Jockey club has a clear interest in these proceedings between these parties, and a senior member of the Jockey Club is a party to this litigation.

**(b) Mr. Jennings, as a legislative agent and lobbyist for The Jockey Club, has an interest that the Court had an independent duty to disclose under 28 U.S.C. § 455(b)(4).**

Patrick Jennings is a founding partner of Commonwealth Alliances, established in January of 2008. For the past 15 years it has operated as a lobbying firm. Mr. Jennings is the managing

7

partner. In April of 2022, Mr. Jennings' firm picked up a new client: The Jockey Club. In 2022, The Jockey Club paid Mr. Jennings and his associates $50,750.00.[6] *See* Exhibit 5, Excerpts from Legislative Agent Compensation Report for 2022.[7] For his lobbying efforts on behalf of The Jockey Club as a legislative agent, Mr. Jennings is reported to have earned $34,256.25 in fees in 2022. *See* Exhibit 5.[8] Plaintiffs first became aware of the existence and extent of the financial relationship between Mr. Jennings and the Jockey Club on February 8, 2023. The fees earned in 2022 are a clear source of extrajudicial bias.[9]

Mr. Jennings, spouse of Judge Jennings, "has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding." 28 U.S.C. § 455(b)(4). Mr. Jennings' client has a clear and publicly stated interest in supporting any and all punishment that Churchill Downs seeks to impose upon Mr. Baffert, which is at issue here. That client has taken active steps through court filings in

---

[6] Patrick Jennings, Managing Partner; Katherine Hall, Partner; Julia Crigler, Strategic Consultant. *See* Exhibit 6, Commonwealth Alliances Webpage.

[7] The full reports can be found online at https://klec.ky.gov/Reports/Pages/Employers-and-Legislative-Agents.aspx

[8] From a review of publicly available data, Mr. Jennings began accepting payments from the Jockey Club in April of 2022. *See* Exhibit 5. This matter was initially filed on February 28, 2022, and the Judge herein was assigned at that time.

[9] Records also reveal that Patrick Jennings and his company, Commonwealth Alliances, contracted to the employes as Legislative Agent/Lobbyist for The Stronach Group (TSG). The Stronach Group owns Santa Anita Park, Pimlico Race Course, and Gulfstream Park Racing and several other racetracks. During Patrick Jennings' engagement as the lobbyist for TSG, litigation was pending against TSG by Jerry Hollendorfer (a racehorse trainer excluded from Santa Anita by TSG). *See Hollendorfer v. Los Angeles Turf Club, Inc., et. al.,* LA County Case No. 19STCV3435. Mr. Jennings's clients, The Jockey Club and The Stronach Group have engaged in litigation to support racetrack ownership's purported right to exclude trainers for any reason without notice, hearing, or due process. This is the same conduct and interest by CDI challenged in this matter. See Exhibit 7, Excerpts from Legislative Agent Compensation Report for 2022.

related matters to support the racetracks' efforts to punish Mr. Baffert without a hearing. The Court derives marital income from the fees paid to her husband by an interested party, The Jockey Club. The Court had an ongoing responsibility to inform herself about her spouse's financial interests. Once so apprised, the Court had a duty to inform the parties of any interest by her spouse that either presents grounds for disqualification or a situation in which her impartiality might reasonably be questioned, warranting disqualification. 28 U.S.C. § 455(a).

At no time during the litigation did Judge Jennings disclose her husband's employment by The Jockey Club or her family's income derived from said employment.

The standards found in §455 and §144 are clear. When the facts would convince a reasonable man that a bias exists arising out of the judge's background and association in which her impartiality might reasonably be questioned, the judge should disqualify herself and proceed no further. The financial or other interests of The Jockey Club, its stated policies, contempt for Mr. Baffert, and the employment of Mr. Jennings' lobbying firm, Commonwealth Alliances, in 2022 near in time to the initial filing, provide fertile grounds for reasonable questions of this Court's impartiality. The unavoidable source of extrajudicial bias is that R. Alex Rankin, a named Defendant in this case, serves as a Jockey Club Steward[10] for The Jockey Club, her husband's employer. To sit in judgment of a matter that impacts the clearly articulated interests of one of her husband's employers from whom she derives a significant portion of marital income demands full disclosure by the Court, recusal and disqualification.

---

[10] "The Jockey Club Stewards are our board of directors."
https://www.thejockeyclub.co.uk/about-us/our-structure/our-board/

9

**WHEREFORE**, Defendants Bob Baffert and Bob Baffert Racing Stables, Inc. respectfully request that the assigned judge to this cause, Hon. Rebecca G. Jennings should disqualify herself and recuse from any further proceedings, pursuant to 28 U.S.C. §§ 144 and 455.

Respectfully submitted,

*/s/ Clark O. Brewster*
**BREWSTER & DE ANGELIS, P.L.L.C.**
Clark O. Brewster, OBA #1114
Guy A. Fortney, OBA #17027
Joseph C. De Angelis, OBA #34142
2617 East 21st Street
Tulsa, Oklahoma 74114
(918) 742-2021 Office; (918) 742-2197 Fax
cbrewster@brewsterlaw.com
jcdeangelis@brewsterlaw.com
*Admitted Pro Hac Vice*

and

**MILLER, GRIFFIN & MARKS, PSC**
Michael D. Meuser
Carroll M. Redford, III
Elizabeth C. Woodford
Security Trust Building
271 W. Short Street, Suite 600
Lexington, Kentucky, 40507 U.S.A.
Phone: (859) 255-6676 Fax: (859) 259-1562
mmeuser@kentuckylaw.com
***Attorneys for Plaintiffs***

**CERTIFICATE OF SERVICE**

I hereby certify that on February 10, 2023, I electronically transmitted the foregoing document using the ECF System for filing and transmittal of a Notice of Electronic Filing to all ECF registrants who have appeared in this case.

*/s/ Clark O. Brewster*
