UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| BOB BAFFERT, ET AL.,<br>    PLAINTIFFS,<br>v.<br><br>CHURCHILL DOWNS INC., ET AL.,<br>    DEFENDANTS. | Case No. 3:22-CV-123-RGJ |

# DEFENDANTS' BRIEF IN OPPOSITION TO
# PLAINTIFFS' MOTION TO DISQUALIFY TRIAL JUDGE

| | |
|---|---|
| Chadwick A. McTighe<br>Jeffrey S. Moad<br>STITES & HARBISON, PLLC<br>400 W. Market Street, Ste. 1800<br>Louisville, KY 40202<br>(502) 587-3400<br>cmctighe@stites.com<br>jmoad@stites.com | Orin Snyder<br>Matt Benjamin<br>GIBSON, DUNN & CRUTCHER LLP<br>200 Park Avenue<br>New York, NY 10166<br>(212) 351-4000<br>osnyder@gibsondunn.com<br>mbenjamin@gibsondunn.com |
| Christine Demana<br>GIBSON, DUNN & CRUTCHER LLP<br>2001 Ross Avenue, Suite 2100<br>Dallas, TX 75201<br>(214) 698-3100<br>cdemana@gibsondunn.com | Thomas H. Dupree Jr.<br>GIBSON, DUNN & CRUTCHER LLP<br>1050 Connecticut Avenue NW<br>Washington, DC  20036-5306<br>(202) 955-8500<br>tdupree@gibsondunn.com |

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

    I.    There Is No Basis For Recusal. ......................................................................................... 3

        A.    Plaintiffs' Motion Is Untimely And Procedurally Defective. ..................................... 3

        B    Plaintiffs' Arguments For Recusal Are Fabricated And Frivolous. ........................... 6

    II.    The Court Should Order Plaintiffs And Their Counsel To Show Cause. ........................ 9

CONCLUSION ............................................................................................................................. 12

# TABLE OF AUTHORITIES

**CASES**

*In re Aguinda*,
   241 F.3d 194 (2d Cir. 2001)..................................................................................................2

*Goward v. United States*,
   569 F. App'x 408 (6th Cir. 2014) ..........................................................................................5

*Green v. Branson*,
   108 F.3d 1296 (10th Cir. 1997) ............................................................................................4

*Harris v. United States*,
   2021 WL 3027830 (6th Cir. May 14, 2021) ......................................................................8, 9

*Hughes v. United States*,
   899 F.2d 1495 (6th Cir. 1990) ..............................................................................................2

*INVST Fin. Grp., Inc. v. Chem-Nuclear Sys., Inc.*,
   815 F.2d 391 (6th Cir. 1987) .........................................................................................10, 11

*Jallali v. U.S. Funds*,
   573 F. App'x 915 (11th Cir. 2014) ........................................................................................4

*Laird v. Tatum*,
   409 U.S. 824 (1972)..............................................................................................................2

*Layman v. United Parcel Serv., Inc.*,
   2019 WL 3291567 (W.D. Ky. July 22, 2019) ......................................................................4

*Lease v. Fishel*,
   712 F. Supp. 2d 359 (M.D. Pa. 2010) ...................................................................................3

*Liteky v. United States*,
   510 U.S. 540 (1994)..............................................................................................................8

*Lovelace v. McCracken Cnty., Kentucky*,
   2022 WL 4238092 (W.D. Ky. Sept. 14, 2022) .....................................................................2

*Mason v. Burton*,
   720 F. App'x 241 (6th Cir. 2017) ..........................................................................................9

*New London Tobacco Mkt., Inc. v. Kentucky Fuel Corp.*,
   2018 WL 7288756 (E.D. Ky. Nov. 29, 2018).......................................................................5

*Regions Bank v. Gateway Hous. Found.*,
   732 F. App'x 402 (6th Cir. 2018) ........................................................................................10

*Scott v. Metro. Health Corp.*,
   234 F. App'x 341 (6th Cir. 2007) ................................................................................. 2, 5, 7

*Scott v. Rubio*,
   516 F. App'x 718 (10th Cir. 2013) ....................................................................................... 4

*United States v. Denton*,
   434 F.3d 1104 (8th Cir. 2006) ............................................................................................. 2

*United States v. Siegelman*,
   640 F.3d 1159 (11th Cir. 2011) ........................................................................................... 4

*United States v. Steele*,
   2019 WL 191633 (E.D. Ky. Jan. 11, 2019) ........................................................................ 6

*United States v. Sypher*,
   2010 WL 5393849 (W.D. Ky. Dec. 22, 2010) ......................................................... 2, 3, 4, 5, 6

*United States v. Turner*,
   2005 WL 3234331 (E.D. Ky. Nov. 30, 2005) .................................................................. 6, 8

*United States v. Washam*,
   2007 WL 1166038 (W.D. Ky. Apr. 17, 2007) .................................................................... 8

**STATUTES**

28 U.S.C. § 144 ......................................................................................................................... 2, 5, 6

28 U.S.C. § 455 ......................................................................................................................... 2, 6, 7

**RULES**

Fed. R. Civ. P. 11 ........................................................................................................................ 5, 10

**TREATISES**

Wright & Miller, 13D Federal Practice and Procedure § 3550 (3d ed. 2019) ................................ 4

## PRELIMINARY STATEMENT

Bob Baffert and his attorney Clark Brewster continue to launch brazen and baseless attacks on the integrity of this Court. Their latest salvo—a motion to disqualify—is a bad-faith tactical gambit to threaten and intimidate the Court, and to sully the Court's image in the press, by enabling them to spin a potential loss as the product of a corrupt tribunal.

Brewster previewed his strategy during a sidebar at the preliminary injunction hearing, where he insinuated that the only way the Court could have been aware of a publicly reported (but irrelevant) case was through secret discussions with defense counsel. He then doubled down on this approach after the hearing, when he sent an email falsely accusing the Court and defense counsel of improper *ex parte* communications and threatening to present his manufactured and false allegation to the U.S. Marshals for criminal investigation.

The Court responded forcefully to Brewster's threat:

> Plaintiffs' unsubstantiated claim that the Court engaged in improper *ex parte* communications is serious. Plaintiffs are warned that any future conduct implicitly threatening the Court, attempting to create or fabricate a situation suggesting recusal, or made for other advantage or litigation tactic will not be tolerated and may result in a show cause hearing and disciplinary action.

Doc. 65 at 2.

The Court should leave no doubt that it meant what it said. Plaintiffs' motion to disqualify is exactly what the Court warned them not to do. The motion is untimely and frivolous—it is filled with falsehoods and filed in bad faith. The purported and contrived connection between this Court and The Jockey Club does not come remotely close to requiring recusal. And Plaintiffs' allegation that the Court denied them fair treatment at the hearing is not just false but outrageously so—the Court was fair, impartial, and judicial in every respect, even

1

when Plaintiffs' counsel defied agreed-upon time limits, wasted massive amounts of time with irrelevant presentations, and attacked the Court with wild accusations of ethical transgressions.

The Court should deny the motion to disqualify and order a show cause hearing to hold Plaintiffs and their counsel accountable for their actions, and to punish and deter this type of serious litigation misconduct.

## ARGUMENT

"The Supreme Court has directed that 'a federal judge has a duty to sit where not disqualified which is equally as strong as the duty to not sit where disqualified.'" *Lovelace v. McCracken Cnty., Kentucky*, 2022 WL 4238092, at *1 (W.D. Ky. Sept. 14, 2022) (quoting *Laird v. Tatum*, 409 U.S. 824, 837 (1972)). Accordingly, "where the standards governing disqualification have not been met, disqualification is not optional; rather, it is prohibited." *In re Aguinda*, 241 F.3d 194, 201 (2d Cir. 2001).

Plaintiffs move to disqualify under 28 U.S.C. § 144 and 28 U.S.C. § 455. Section 144 "requires a trial court judge to recuse upon the filing of a timely and sufficient affidavit that the judge is biased either against the movant or in favor of any adverse party." *United States v. Sypher*, 2010 WL 5393849, at *1 (W.D. Ky. Dec. 22, 2010), *aff'd*, 684 F.3d 622 (6th Cir. 2012). And under Section 455, "a judge must recuse herself if a reasonable, objective person, knowing all of the circumstances, would have questioned the judge's impartiality." *Hughes v. United States*, 899 F.2d 1495, 1501 (6th Cir. 1990). Under either statute, "a judge is presumed to be impartial, and the party seeking disqualification 'bears the substantial burden of proving otherwise.'" *Scott v. Metro. Health Corp.*, 234 F. App'x 341, 352 (6th Cir. 2007) (quoting *United States v. Denton,* 434 F.3d 1104, 1111 (8th Cir. 2006)). "The burden is not on the judge to prove that [she] is impartial." *Id.*

2

I.      **There Is No Basis For Recusal.**

Plaintiffs' motion is both untimely and procedurally defective. Typically, courts "first address the procedural issues with [a recusal] motion before turning to the substantive analysis applicable to both statutes." *Sypher*, 2010 WL 5393849, at *1. Here, Plaintiffs' lengthy (and tactical) delay in bringing this motion—and their failure to comply with basic procedural elements of moving for disqualification—are sufficient grounds to deny it outright. In the event the Court reaches the merits, there is absolutely no reason for the Court to recuse.

     A.      **Plaintiffs' Motion Is Untimely And Procedurally Defective.**

1.      The alleged facts underlying the disqualification demand—Michael Patrick Jennings's government-relations work for The Jockey Club—have been in the public domain for nearly one year. Yet Plaintiffs did not move for disqualification until *after* the Court held a hearing on their motion for a preliminary injunction. The timing establishes that Plaintiffs had a strategic motive in filing. They concluded that the hearing had not gone well for them and believed that moving to disqualify would serve their tactical purposes: either scare the Court into recusing, in hopes that a different judge would view Plaintiffs' case more favorably—or intimidate the Court into granting a preliminary injunction to prove that it was not biased. At a minimum, Plaintiffs would advance their public relations goals by enabling them to portray a potential loss as the product of a financially-compromised judge.

"[I]n assessing recusal requests, courts must remain mindful that, in the hands of some unscrupulous advocates, a recusal motion may simply be a calculated tactical tool designed to avoid the result which the law dictates in a case." *Lease v. Fishel*, 712 F. Supp. 2d 359, 374 (M.D. Pa. 2010), *aff'd*, 2010 WL 4318833 (M.D. Pa. Oct. 22, 2010). To guard against tactical recusal motions, and "to ensure that recusal requests do not become last-minute devices used by expedient counsel to attempt to avoid outcomes mandated by law," *id.*, Sections 144 and 455 are

3

both subject to "a timeliness requirement." *Layman v. United Parcel Serv., Inc.*, 2019 WL 3291567, at *1 (W.D. Ky. July 22, 2019) (citing Wright & Miller, 13D Federal Practice and Procedure § 3550 (3d ed. 2019)) (collecting cases). Although there is no bright-line rule for when a recusal or disqualification motion becomes untimely, Plaintiffs' delay of almost one year—particularly in the context of their other attacks on the Court—is well over the line. *See, e.g.*, *Jallali v. U.S. Funds*, 573 F. App'x 915, 916 (11th Cir. 2014) (affirming denial of recusal motion where movant delayed "eight months" in filing motion); *Scott v. Rubio*, 516 F. App'x 718, 723 (10th Cir. 2013) (affirming denial of recusal motion where the "conduct of which [the movants] complained . . . occurred more than five months before they sought recusal"); *Green v. Branson*, 108 F.3d 1296, 1305 (10th Cir. 1997) (affirming denial of recusal motion where party waited five weeks to move to recuse).

Brewster says he only discovered that Mr. Jennings performed work for The Jockey Club on February 8, 2023, when he "searched the internet." Brewster Aff. ¶ 16. This is not credible. In any event, "[the] timeliness requirement applies to matters that are public knowledge, even if the movant does not in fact know them." *Layman*, 2019 WL 3291567, at *2; *see also United States v. Siegelman*, 640 F.3d 1159, 1188 (11th Cir. 2011) ("The rule has been applied when the facts upon which the motion relies are public knowledge, even if the movant does not know them.") (citation omitted); *Sypher*, 2010 WL 5393849, at * 2 (denying recusal motion where "many, if not all, of the facts the defendant cites in her affidavit have been publicly available since the inception of her case"). Here, the fact of Mr. Jennings's work for The Jockey Club was publicly available since at least May 26, 2022, based on the public records of registered lobbyists maintained by the Kentucky Legislative Ethics Commission. *See* Ex. 1. Mr. Jennings's work for The Jockey Club was also publicly reported on in news articles well before the hearing on

4

Plaintiffs' motion for a preliminary injunction. *See, e.g.*, Ex. ___ (N. Ky. Tribune, Jan. 21, 2023).

Because the "information on which [Baffert] bases his claim for disqualification was a matter of public record" for nearly a year before Plaintiffs filed their motion, it is untimely and must be denied. *Goward v. United States*, 569 F. App'x 408, 411 (6th Cir. 2014).

2. Plaintiffs' request for disqualification under Section 144 is also procedurally defective because they have not certified that their claims are brought in good faith. "The requirements of § 144 are strictly construed," and provide that "a motion for recusal should be accompanied by both a factual affidavit *and a separate certificate* that the affidavit was made in good faith." *Scott*, 234 F. App'x at 353 (quotation omitted and emphasis added). This "certification accompanying a § 144 affidavit must certify to the good faith of counsel as well as that of the affiant." *Sypher*, 2010 WL 5393849, at *3.

"Totally disregarding the statute," *Scott*, 234 F. App'x at 353 (quotation omitted), Plaintiffs filed an affidavit but failed to submit a separate "certificate of counsel of record stating that it is made in good faith," 28 U.S.C. § 144. That is fatal to their request under Section 144. *See, e.g.*, *New London Tobacco Mkt., Inc. v. Kentucky Fuel Corp.*, 2018 WL 7288756, at *1 (E.D. Ky. Nov. 29, 2018) (Because "the motion did not contain a 'certificate from the counsel of record stating that it is made in good faith,' as required by § 144," "the motion must be denied."); *Sypher*, 2010 WL 5393849, at *3 (denying recusal motion under Section 144 because "[t]he certification accompanying the defendant's motion fails to comply with the procedural demands of § 144 and is therefore legally insufficient"). It is also telling—counsel apparently did not want to make that certification under Rule 11. Because the Court "is not at liberty to

5

ignore the plain-language requirements of § 144," Plaintiffs' "motion must be denied" on this ground as well. *United States v. Steele*, 2019 WL 191633, at *1 (E.D. Ky. Jan. 11, 2019).

### B. Plaintiffs' Arguments For Recusal Are Fabricated And Frivolous.

Plaintiffs' arguments for recusal are so weak and attenuated that they cannot have been presented in good faith. Mr. Jennings's work for The Jockey Club—an entity that is not a party to this case and has not even sought to appear in this case—obviously does not require the Court's recusal, and the way the Court conducted the preliminary injunction hearing does not reflect the slightest hint of bias. Disturbingly and regrettably, Baffert and Brewster are weaponizing unsubstantiated allegations against the Court's integrity as part of their litigation strategy.

1. Mr. Jennings's work for The Jockey Club does not require recusal. The Jockey Club is not a party to this dispute, and there is no allegation that the work Mr. Jennings performed for The Jockey Club is in any way related to this dispute. Just the opposite: The Jockey Club has publicly stated that "Patrick Jennings and his colleagues at Commonwealth Alliances, a government relations firm in Frankfort, Ky., have represented The Jockey Club since the spring of 2022," and "Commonwealth's representation of The Jockey Club is limited solely to legislation introduced during the 2022 legislative session and is in no way related to any matter currently pending before a court." Ex. 3.

Recusal may be appropriate where a judge has a financial or "other interest that could be substantially affected by the outcome of the proceeding." *Sypher*, 2010 WL 5393849, at *4 (citing 28 U.S.C. § 455(b)(4)). It is well established, however, that "remote, contingent, or speculative interests" like the ones alleged here "do not require recusal." *Id*. Plaintiffs "do not allege that this judge's spouse has any direct interest in this litigation," "[n]or could any reasonable person find that such a direct interest exists." *United States v. Turner*, 2005 WL

6

3234331, at *2 (E.D. Ky. Nov. 30, 2005). The Sixth Circuit has rejected similar efforts to disqualify judges based on their spouse's job. In *Scott v. Metropolitan Health Corp.*, the plaintiff sought recusal on the basis that the judge's wife worked for a law firm that represented a bank connected to the named defendant. 234 F. App'x at 354. The court held "that disqualification is not required on the basis of [such] remote, contingent, indirect or speculative interests." *Id.* at 357 (quotation omitted). Here too, Plaintiffs' tortured effort to manufacture a conflict of interest "is far too attenuated and speculative as a matter of law" to support recusal. *Id.* at 356.

Plaintiffs argue that The Jockey Club filed an amicus brief in a different case involving Baffert. But that does not support disqualification in this case, where The Jockey Club is neither a party nor an amicus. Moreover, even if Plaintiffs had evidence supporting their assertion that The Jockey Club is "anti-Baffert," there are no facts linking that interest to a direct and substantial financial or other interest held by this Court or Mr. Jennings. 28 U.S.C. § 455(b)(4). Baffert also alleges that The Jockey Club has an ownership stake in "Blood Horse, LLC," an online publication Baffert alleges "has been a constant source of negative articles" about him. Mot. 6. But here too, there is no link between the interests of Blood Horse, LLC and this Court that could support recusal. Plaintiffs also note that Defendant R. Alex Rankin "serves as a Jockey Club Steward," Mot. 9, but that plainly does not require recusal, as there is no basis for linking any interest The Jockey Club could possibly have in the outcome of this dispute (and there is none) to a direct and substantial interest of this Court. There is zero evidence suggesting that the outcome of this litigation would have any bearing whatsoever on Mr. Jennings's financial or other interests, much less any interest held by this Court.

As Judge Caldwell held when faced with a similarly unjustified demand to recuse herself: "[T]his judge *cannot* recuse on the basis of such a remote connection to her husband's current employment." *Turner*, 2005 WL 3234331, at *3 (emphasis added).

2.  Nor do this Court's actions during the preliminary injunction hearing even remotely warrant recusal. Brewster falsely alleges that "[t]hroughout the proceedings, Plaintiff and his counsel were treated disparately by Judge Jennings. Judge Jennings interrupted questioning, terminated counsel's argument, denied cross-examination on points raised on direct, and permitted defense counsel to commence the defense witness presentation by calling Mr. Baffert for cross before his lawyer was permitted to provide a direct exam and ultimately assisting defense counsel in raising objections." Brewster Aff. ¶ 27. The false impression Brewster strives to create of a biased atmosphere is rebutted not just by the transcript of proceedings, but by his own client, who proclaimed to the media on the courthouse steps immediately after the hearing that "today was great because I finally got to tell my story in a non-bias[ed] atmosphere." Ex. 4.

The Sixth Circuit holds that "a judge's remarks during the course of a judicial proceedings are almost never a valid basis for a bias or partiality motion," *Harris v. United States*, 2021 WL 3027830, at *2 (6th Cir. May 14, 2021), and Plaintiffs do not come close to demonstrating the "very high degree of favoritism or antagonism" that is required to disqualify on this basis. *Id.* As the Supreme Court has explained, "judicial remarks during the course of a [hearing] that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Liteky v. United States*, 510 U.S. 540, 555 (1994); *see also United States v. Washam*, 2007 WL 1166038, at *2 (W.D. Ky. Apr. 17, 2007) (same). "[A] trial court judge may interject [her]self into the [hearing], speak to counsel,

8

. . . question witnesses in order to clear up confusion regarding the evidence or aid in its orderly presentation,' and . . keep the parties focused on the issues related specifically to the [claims alleged]." *Mason v. Burton*, 720 F. App'x 241, 248 (6th Cir. 2017) (quotation omitted).

Here, the Court went the extra mile to give Plaintiffs a fair chance to present their case—even when, after the parties mutually agreed to limit each side's presentation to two hours, Plaintiffs spent all of their allotted time on an opening statement that had little relevance to the questions the Court had been asked to decide. Although the Court would have been well within its rights to terminate Plaintiffs' presentation at that point, the Court took time from its own calendar and extended the hearing into a second day to give Plaintiffs an opportunity to direct and cross-examine witnesses. When the hearing concluded, Plaintiffs had spent approximately 4 hours and 4 minutes presenting their case, whereas Defendants had spent roughly 2 hours and 24 minutes. As Brewster himself told the Court at the hearing, "you've been great at giving us time. I appreciate it, Judge. I really do." Ex. 5 at 263:11–13. For Plaintiffs to now complain that the Court subjected *them* to unfavorable disparate treatment by unfairly "terminat[ing]" their presentation, Brewster Aff. ¶ 27, is shocking and reprehensible. To the extent the Court made any comments that Brewster now deems negative to his side, it was self-inflicted. Because "[n]one of the [Court's] actions or comments in this case rise to the level of demonstrating bias or prejudice," there is no basis for recusal. *Harris*, 2021 WL 3027830, at *2.

**II.  The Court Should Order Plaintiffs And Their Counsel To Show Cause.**

Some courts would have imposed discipline the first time Brewster made false accusations that the Court had engaged in misconduct, when he insinuated during the hearing that the Court had improper *ex parte* communications with defense counsel. Other courts would have imposed discipline the second time Brewster attempted to intimidate the Court and counsel, when he threatened to refer the Court and defense counsel to the U.S. Marshals based on

9

similarly false accusations. This Court reasonably and responsibly chose to instead issue a "warn[ing] that any future conduct implicitly threatening the Court, attempting to create or fabricate a situation suggesting recusal, or made for other advantage or litigation tactic will not be tolerated and may result in a show cause hearing and disciplinary action." Doc. 65 at 2.

Brewster—in an act of outright defiance—has now done *exactly* what this Court warned him not to do. He has attempted to fabricate a situation suggesting recusal as a way of seizing a litigation advantage. And he has done so by launching further false accusations in an attempt to scare, threaten, and intimidate the Court by publicly impugning its integrity. There is nothing more serious and damaging to our judicial system than baseless and tactical attacks on the integrity of its judges.

The Sixth Circuit holds that sanctions may be imposed under Federal Rule of Civil Procedure 11 for filing meritless recusal motions. *See INVST Fin. Grp., Inc. v. Chem-Nuclear Sys., Inc.*, 815 F.2d 391, 402 (6th Cir. 1987) (holding that a "motion for recusal . . . violate[d] all three sanctionable circumstances of Rule 11" because it "was not well-grounded in fact, was not warranted by existing law or a good faith argument for the extension of existing law, and was filed for the improper purpose of delaying the [litigation]"). In addition, "[c]ourts have the inherent power to sanction a party who litigates in bad faith, *i.e.*, a party who knowingly advances a meritless claim for an improper purpose." *Regions Bank v. Gateway Hous. Found.*, 732 F. App'x 402, 404 (6th Cir. 2018).

Here, Brewster's conduct warrants a show cause hearing.

- He defied this Court's warning to stop fabricating purported grounds for recusal as a "litigation tactic." Doc. 65 at 2.

- He has now falsely accused the Court three times of ethical violations and falsely

10

> stated he made "no accusation of ethical or judicial impropriety" (Brewster Aff. ¶ 10), even though he threatened to refer the Court and defense counsel to the U.S. Marshals for criminal investigation.

- He continues to say that the Court and Defendants had unethical *ex parte* communications without any evidence supporting his false claim. *See* Brewster Aff. ¶ 9 ("The following day Mr. Snyder occupied the center podium in an aggressive manner and declared the order of the proceedings to Plaintiffs' counsel with a clarity that had not previously been rendered by the Court."); *id.* at ¶ 10 accusing Defendants' counsel of having a "surprising degree of knowledge about the mode and manner of the proceedings").

- His recusal motion and affidavit make new false accusations intended to impugn the integrity of the Court. *See* Brewster Aff. ¶ 28 (claiming the Court's "extraordinary reaction" to his threat to contact the U.S. Marshals "was connected to the conflicts associated with her husband's advocacy on behalf of The Jockey Club" and intended to cover up what the Court knew was a conflict of interest).

The Sixth Circuit has identified three circumstances where a disqualification motion may result in sanctions, any one of which is sufficient: the motion is not "well grounded in fact"; the motion is "not warranted by existing law or a good faith argument for the extension of existing law"; or the motion was filed for an "improper purpose." *INVST Fin. Grp.*, 815 F.2d at 402. Plaintiffs' motion is sanctionable on all three bases.

11

## CONCLUSION

The Court should deny the motion to disqualify and order a show cause hearing.

Dated: February 13, 2023

Respectfully submitted,

Chadwick A. McTighe
Jeffrey S. Moad
STITES & HARBISON, PLLC
400 W. Market Street, Ste. 1800
Louisville, KY 40202
(502) 587-3400
cmctighe@stites.com
jmoad@stites.com

/s/ Orin Snyder
Orin Snyder
Matt Benjamin
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
(212) 351-4000
osnyder@gibsondunn.com
mbenjamin@gibsondunn.com

Christine Demana
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
(214) 698-3100
cdemana@gibsondunn.com

Thomas H. Dupree Jr.
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue NW
Washington, DC 20036-5306
(202) 955-8500
tdupree@gibsondunn.com

## CERTIFICATE OF SERVICE

I certify that on February 13, 2023, I served this document on all counsel of record through CM/ECF.

/s/ Orin Snyder