UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| BOB BAFFERT, ET AL.,<br>   PLAINTIFFS,<br>v.<br><br>CHURCHILL DOWNS INCORPORATED, ET AL.,<br>   DEFENDANTS. | Case No. 3:22-CV-123-RGJ |

# DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Chadwick A. McTighe
Jeffrey S. Moad
STITES & HARBISON, PLLC
400 W. Market Street, Ste. 1800
Louisville, KY 40202
(502) 587-3400
cmctighe@stites.com
jmoad@stites.com

Christine Demana
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
(214) 698-3100
cdemana@gibsondunn.com

Orin Snyder
Matt Benjamin
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
(212) 351-4000
osnyder@gibsondunn.com
mbenjamin@gibsondunn.com

Thomas H. Dupree Jr.
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue NW
Washington, DC  20036-5306
(202) 955-8500
tdupree@gibsondunn.com

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT .................................................................................................................................. 3

    Defendants Are Entitled To Summary Judgment. ............................................................... 3

    I.    Baffert's KHRC License Was Not Rendered Valueless By CDI's Suspension. ................................................................................................................. 4

    II.   Baffert Received Adequate Process Under The Governing Contracts. ....................... 9

CONCLUSION ............................................................................................................................. 12

i

## TABLE OF AUTHORITIES

**CASES**

*Daunt v. Benson,*
 999 F.3d 299 (6th Cir. 2021) ..................................................................................................10

*Hasanaj v. Detroit Pub. Sch. Cmty. Dist.,*
 35 F.4th 437 (6th Cir. 2022) .....................................................................................................7

*Heid v. Aderholt,*
 2022 WL 3025431 (S.D. Ohio Aug. 1, 2022)..........................................................................10

*Howe v. City of Akron,*
 801 F.3d 718 (6th Cir. 2015) ...................................................................................................10

*J. Endres v. Ne. Ohio Med. Univ.,*
 2018 WL 4002613 (N.D. Ohio Aug. 22, 2018).......................................................................12

*J. Endres v. Ne. Ohio Med. Univ.,*
 938 F.3d 281 (6th Cir. 2019) ...................................................................................................11

*Leary v. Daeschner,*
 349 F.3d 888 (6th Cir. 2003) .....................................................................................................4

*Med Corp. v. City of Lima,*
 296 F.3d 404 (6th Cir. 2002) ............................................................................................2, 4, 7

*O'Bannon v. Town Ct. Nursing Ctr.,*
 447 U.S. 773 (1980)................................................................................................................4, 8

*Ramsey v. Bd. of Educ. of Whitley Cnty.,*
 844 F.2d 1268 (6th Cir. 1988) .................................................................................................11

*Reed v. Vill. of Shorewood,*
 704 F.2d 943 (7th Cir. 1983) .....................................................................................................8

*Smith v. Tyler,*
 2023 WL 2173194 (W.D. Ky. Feb. 22, 2023) .......................................................................5, 9

*Stidham v. Peace Officer Standards & Training,*
 265 F.3d 1144 (10th Cir. 2001) .................................................................................................8

*Superior Commc'ns v. City of Riverview,*
 881 F.3d 432 (6th Cir. 2018) .............................................................................................10, 11

*Troxell v. McCreary Cnty. Det. Ctr.,*
 2006 WL 897186 (E.D. Ky. Apr. 4, 2006)...............................................................................3

*Via The Web Designs, L.L.C. v. Beauticontrol Cosmetics, Inc.*,
   148 F. App'x 483 (6th Cir. 2005) ..............................................................................................1, 3

*Westborough Mall, Inc. v. City of Cape Girardeau*,
   794 F.2d 330 (8th Cir. 1986) ..........................................................................................................8

**OTHER AUTHORITIES**

Equibase, Keeneland – Lafayette Stakes (Apr. 7, 2023), https://bit.ly/3odGXqN ..........................2

Equibase, Keeneland – Stonestreet Lexington Stakes (Apr. 15, 2023), https://bit.ly/40eZZdB .....2

**RULES**

Fed. R. Civ. P. 56(b) ........................................................................................................................3

Fed. R. Civ. P. 56(d) ........................................................................................................................3

Fed. R. Civ. P. 56(e)(2) ................................................................................................................5, 9

## PRELIMINARY STATEMENT

Plaintiffs' opposition confirms that there are no material facts in dispute and that the Court can resolve their last remaining claim as a matter of law. The extensive evidentiary record compiled for the preliminary injunction hearing established two central facts that Plaintiffs do not dispute, that will not change based on discovery, and that compel judgment for Defendants on Plaintiffs' claim that CDI's suspension violated due process:

- During the suspension, Baffert continued to use his KHRC license to race at Keeneland racetrack in Kentucky, win races, and earn purse money; and

- Baffert signed two contracts—the Rules and Conditions of Racing, and the Stall Application—as a condition for racing in the 2021 Kentucky Derby, and both contracts permitted CDI to suspend Baffert without notice and a hearing.

There is no need to consign the parties—and the many non-party government officials Plaintiffs intend to subpoena—to months of onerous discovery that cannot salvage their due process claim and will make no difference to the outcome of this case. Because Plaintiffs have not "show[n] how further discovery would enable [them] to rebut [Defendants'] showing of an absence of a genuine issue of fact," *Via The Web Designs, L.L.C. v. Beauticontrol Cosmetics, Inc.*, 148 F. App'x 483, 489 (6th Cir. 2005), this Court should grant summary judgment *now*—rather than after Plaintiffs have subjected Defendants and Kentucky officials to what Plaintiffs have promised will be a scorched-earth discovery campaign.

Since Plaintiffs cannot dispute the dispositive, case-ending facts, they instead rest their opposition on a serious distortion of the law. Plaintiffs' argument that they need only show that Baffert could not use his KHRC license on certain days to establish a constitutional deprivation is simply wrong. That may suffice in cases alleging a *direct* deprivation of property, but in cases

like this one alleging an *indirect* deprivation, the test is whether the defendant has "*completely* destroy[ed] the value of [the plaintiff's] license" and rendered it "valueless." *Med Corp. v. City of Lima*, 296 F.3d 404, 413 (6th Cir. 2002); *see also* Dkt. 70 at 33 (Memorandum Opinion & Order of Feb. 17, 2023) (citing *Med Corp.*). Defendants obviously did not "completely destroy" the value of Baffert's license and render it "valueless," since he used it to win races and earn money during CDI's suspension. Indeed, Baffert is actively using and receiving significant financial value from his license while the parties brief this motion: In the two weeks since Baffert filed his opposition, he has used his KHRC license to enter horses in two races at Keeneland, both of which finished second and earned a total of $133,500. *See* Equibase, Keeneland – Lafayette Stakes (Apr. 7, 2023), https://bit.ly/3odGXqN (Hejazi finished second and earned $58,500); Equibase, Keeneland – Stonestreet Lexington Stakes (Apr. 15, 2023), https://bit.ly/40eZZdB (Arabian Lion finished second and earned $75,000). This recent activity further confirms that Baffert's KHRC license has not been rendered "valueless."

Plaintiffs fare no better in attempting to rebut the second reason summary judgment is warranted: Baffert was not denied adequate process. Plaintiffs urge the Court to analyze whether Baffert "waived" his purported constitutional right to notice and a hearing before CDI could suspend him. That argument is mistaken because Baffert never *had* a right to notice and a hearing to begin with; the process he was due was defined by the contracts he signed. As this Court has already recognized, those contracts make clear that he is not entitled to a pre-suspension hearing—and even if Plaintiffs could argue to the contrary, their remedy would be a breach-of-contract claim, not a due process claim.

This Court held in February that, even if the due process claim survived under the Rule 12(b)(6) standard, it was very unlikely to succeed on the merits. Dkt. 70 at 34. Because this

Court now has all the evidence it needs to decide this claim on the merits, and because discovery cannot uncover any facts that could change the outcome, the Court should grant summary judgment and dismiss the final remaining claim.

## ARGUMENT
### Defendants Are Entitled To Summary Judgment.

The due process claim is ripe for summary judgment because there is no genuine dispute of material fact. Plaintiffs do not dispute that Baffert used his KHRC license to win purse money at Keeneland during his CDI suspension, and he has been free to use it at other non-CDI tracks as well; therefore, his license was not rendered completely valueless. Nor do Plaintiffs dispute that Baffert signed contracts allowing CDI to suspend him without notice and a hearing; therefore, he cannot claim he was wrongfully denied notice and a hearing. Plaintiffs identify no hypothetical fact that could be unearthed in discovery that could possibly create a genuine dispute on these issues, and did not even try to comply with the federal rule that would have allowed them to seek deferral of a summary judgment ruling pending discovery on a particular issue. *See* Fed. R. Civ. P. 56(d).

Instead, Plaintiffs attack a straw man when they accuse Defendants of "contend[ing] that the Court may, in its discretion, deny *any* discovery on a claim solely because a preliminary injunction hearing occurred." Opp. 7. No one is arguing that. Federal Rule of Civil Procedure 56(b) allows parties to move for summary judgment "at any time," including "before [there has been] any opportunity for discovery in the case." *Troxell v. McCreary Cnty. Det. Ctr.*, 2006 WL 897186, at *2 (E.D. Ky. Apr. 4, 2006). In cases like this one, where the parties have developed an extensive factual record in litigating a preliminary injunction, district courts may grant summary judgment if the nonmovant cannot "show how further discovery would enable [it] to rebut the movant's showing of an absence of a genuine issue of fact." *Via The Web Designs,*

3

*L.L.C. v. Beauticontrol Cosmetics, Inc.*, 148 F. App'x 483, 489 (6th Cir. 2005). The Sixth Circuit has specifically endorsed this practice, explaining that summary judgment is warranted where the nonmovant has "failed to produce any new evidence" relevant to summary judgment, thus allowing the district court to "rel[y] on its findings from the preliminary injunction hearing." *Leary v. Daeschner*, 349 F.3d 888, 901 (6th Cir. 2003).

**I.      Baffert's KHRC License Was Not Rendered Valueless By CDI's Suspension.**

Plaintiffs' opposition to Defendants' first argument—that Baffert did not suffer a constitutional deprivation because CDI's suspension did not render his KHRC license valueless—rests on a gross misstatement of the law. *See* Opp. 7–13. The law distinguishes between *direct* deprivations of property (*i.e.*, where the state acts directly upon the protected property) and *indirect* deprivations of property (*i.e.*, where the state takes an action that indirectly affects the protected property).

In the case of direct deprivations, due process protects not only against total deprivations, such as a government seizure of property, but also against partial deprivations, such as a government action that diminishes the value of one's property or restricts one's ability to use it. Indirect deprivations are treated very differently. Although the Supreme Court has indicated that "the due process provision of the Fifth Amendment does not apply to the indirect adverse effects of governmental action," *O'Bannon v. Town Ct. Nursing Ctr.*, 447 U.S. 773, 789 (1980), there is a narrow exception for indirect government actions that drain the property of all value and render it worthless. As the Sixth Circuit has recognized, "courts have typically recognized indirect injuries to the value of property as constitutional 'deprivations' only when such indirect injuries effectively render the property valueless." Dkt. 70 at 13 (quoting *Med Corp. v. City of Lima*, 296 F.3d 404, 413 (6th Cir. 2002) (cleaned up)); *see also Med Corp.*, 296 F.3d at 413 (defendant must "*completely*" destroy the value of [the plaintiff's] license").

Here, Plaintiffs allege an *indirect* deprivation because Defendants did not (and, in fact, cannot) suspend Baffert's KHRC license. Rather, Plaintiffs argue that CDI's suspension of Baffert from participating in races at its properties affected the value of his KHRC license. Indeed, Plaintiffs concede that they are alleging an indirect deprivation. *See* Opp. 8. But despite this concession, their opposition ignores the distinction between direct and indirect deprivations, and relies on cases involving *direct* deprivations that have no relevance to this dispute. For example, *Barry v. Barchi* involved the direct suspension of a trainer's license by the issuing entity—the New York State Racing and Wagering Board. 443 U.S. 55, 57–59 (1979) (cited at Opp. 8, 9). Likewise, *Fuentes v. Shevin* involved the direct deprivation of a property interest through state laws that "authoriz[ed] the summary seizure of goods or chattels in a person's possession under a writ of replevin." 407 U.S. 67, 69–70 (1972) (cited at Opp. 8, 9, 11, 13).

Under the correct legal standard for indirect deprivations—whether the defendant's actions completely destroyed the value of the property such that it was rendered "valueless," Dkt. 70 at 13—Plaintiffs lose. CDI's suspension did not render Baffert's KHRC license valueless because it is undisputed that Baffert used that license during the suspension to enter races at Keeneland (a Kentucky racetrack not owned by CDI) and win substantial amounts of purse money. Indeed, Plaintiffs do not dispute any material facts concerning Baffert's racing activity at Keeneland during CDI's suspension. *See* Opp. 3–5; *Smith v. Tyler*, 2023 WL 2173194, at *7 (W.D. Ky. Feb. 22, 2023) ("Where 'a party . . . fails to properly address another party's assertion of fact,' the Court may treat the fact as undisputed." (quoting Fed. R. Civ. P. 56(e)(2))). Although Plaintiffs say Defendants "repeated the false claim that Baffert personally earned over a million dollars" in these races, Opp. 5 n.2, Defendants actually said that "Baffert-trained *horses* have . . . won a total of $1,211,937" at Keeneland, Mot. 6 (emphasis added). Baffert also had the

5

opportunity to enter horses on other days at Keeneland or at any track not operated by CDI. In short, Plaintiffs do not dispute that Baffert has won a substantial amount of purse money at Keeneland during his CDI suspension. Hence his KHRC license was not rendered valueless.

Plaintiffs argue that Baffert's KHRC license was rendered valueless on *particular days*— namely, those days when he could not use his license because there were no races being held at non-CDI racetracks in Kentucky. This argument is wrong for many reasons. For one thing, just because Baffert could not *use* his license to race on a particular day does not render it valueless, just as a pilot's license is not rendered valueless on a snowy day when the runway is closed. Moreover, even if Baffert could not use his license to enter races on particular days, it still had value on those days. As Baffert admits, he could still use his license to train horses; he could still use his license to acquire stall space; and he could still use his license to enter future races at Keeneland (or Ellis Park, prior to CDI's acquisition of it in September 2022). In addition, an owner could hire Baffert to train a horse to race at Keeneland the following month, knowing that Baffert held a KHRC license that would enable him to do so. *See* Opp. Ex. A (Baffert Aff.) ¶ 3 ("I must be separately licensed in each jurisdiction where I wish to *train, enter,* and race thoroughbred horses (emphasis added)); Compl. ¶ 13 ("Baffert holds a license issued by the Racing Commission to enter horses into races *and to apply for stall occupancy*" (emphasis added)); Opp. 1 (same); Compl. ¶ 108 ("Baffert possesses a license issued by the Racing Commission *to train* and race horses in Kentucky" (emphasis added)); Opp. 18 (same); *id.* at 3 ¶ 4 ("Baffert possesses an unencumbered, Kentucky-issued license to race *and stable* horses in Kentucky" (emphasis added)). Baffert's entire argument rests on the demonstrably false premise that his KHRC license had value only to the extent he could use it to enter races on a particular day. Because the undisputed evidence establishes that Baffert could still use his license to

6

engage in a wide variety of activities other than racing, for this reason too the license had significant value to Baffert every single day of his CDI suspension.

Plaintiffs cite no case adopting their proposed "day by day" approach to constitutional deprivations. And if it were really the correct analytical approach, the Sixth Circuit's *Med Corp.* decision would have come out the other way. In that case, the court found the plaintiff's license to operate an ambulance service was not rendered valueless when the plaintiff could no longer get service calls from the city, because it could still get service calls from private nursing homes and the like. *See* 296 F.3d at 413. But if Plaintiffs' "day by day" approach were correct, the Sixth Circuit would have found a constitutional deprivation arising from those periods of time when there happened to be no calls from nursing homes. *Med Corp.* thus makes clear that an indirect constitutional deprivation does not arise even if (unlike Baffert's case) there actually is a period of time when the license cannot be used in any way. For similar reasons, Plaintiffs fall short in attempting to distinguish *Med Corp.* and *Hasanaj v. Detroit Pub. Sch. Cmty. Dist.*, 35 F.4th 437 (6th Cir. 2022)). They argue that in those cases, the plaintiff's license was not rendered valueless because their license could still be used in different ways—in *Med Corp.*, to take calls from nursing homes; and in *Hasanai*, to be hired by a different school district. Of course, the same is true in this case: Baffert not only *could* use his license to race at Keeneland or elsewhere, he *did* use it in exactly that way—and with great financial success.

Because Sixth Circuit law is unfavorable to them, Plaintiffs look elsewhere. This is the same tactic they tried in the preliminary injunction hearing, where they asked the Court to apply an old Fifth Circuit decision instead of more recent, on-point Sixth Circuit authority—an invitation the Court wisely declined. *See* Dkt. 70 at 30–31. In any event, Plaintiffs' out-of-circuit cases illustrate why there has been no constitutional deprivation here. Each involved a

7

*total* loss of value, such that the plaintiff was forced to effectively surrender their license. *See Reed v. Vill. of Shorewood*, 704 F.2d 943, 949 (7th Cir. 1983), *overruled by Brunson v. Murray*, 843 F.3d 698 (7th Cir. 2016) (holder of liquor license alleged that state's harassment "forced them ultimately to give up their Class A license" even though it "was never actually revoked"); *Westborough Mall, Inc. v. City of Cape Girardeau*, 794 F.2d 330, 337 (8th Cir. 1986) (holder of zoning classification alleged that state "forced [them] ultimately to give up construction of a shopping center" for which they had obtained the zoning rights); *Stidham v. Peace Officer Standards & Training*, 265 F.3d 1144, 1152 (10th Cir. 2001) (holder of police training certificate alleged "he cannot now obtain work as a peace officer" after state spread false claims of criminal conduct to potential employers). Far from being forced to surrender his KHRC license, Baffert *used* his license to earn substantial amounts of money during his CDI suspension.

Plaintiffs conclude their discussion by addressing what they call two "Non-Sequiturs." Opp. 10–13. In "Non-Sequitur No. 1," they reprise their request for a "day by day" approach by relying on *Fuentes*'s statement that even a short-term direct deprivation of property can violate due process. But as explained above, *Fuentes* is a *direct* deprivation case that says nothing about the standard for *indirect* deprivations. Indeed, eight years after the Supreme Court decided *Fuentes*, it suggested that indirect deprivations do not even implicate the Due Process Clause. *See O'Bannon*, 447 U.S. at 789. And in "Non-Sequitur No. 2," Plaintiffs unspool their own non-sequitur by "rebutting" a point Defendants did not argue. Plaintiffs contend that Baffert's use of state licenses other than his KHRC license has no bearing on whether he suffered a constitutional deprivation of his KHRC license. Defendants are not arguing to the contrary—that is why their summary judgment motion discussed only "non-CDI racetracks in Kentucky." *See* Mot. 9–11.

8

In sum, this Court was right when it concluded that "[i]t is highly unlikely that the Court could find Baffert's trainer's license 'valueless' when he has used it" to reap significant earnings "in the Commonwealth of Kentucky while suspended from CDI racetracks." Dkt. 70 at 33. Baffert's financial successes at Keeneland, which he does not dispute, show that he continued to use and profit from his KHRC license throughout the period of CDI's suspension. Because Defendants did not "completely destroy" the value of Baffert's KHRC license and render it "valueless," his due process claim fails, and this Court should enter summary judgment in Defendants' favor.

## II.    Baffert Received Adequate Process Under The Governing Contracts.

Plaintiffs' opposition to Defendants' second argument—that the contracts governing the parties' relationship allowed CDI to suspend Baffert without notice and a hearing—also falls short. *See* Opp. 13–18. Here too, Plaintiffs do not put any material facts in dispute, thus clearing the way for summary judgment. Baffert does not dispute that he signed the Rules and Conditions of Racing or the Stall Application, nor does he dispute any of the terms of those contracts. *See* Opp. 5–6 (responding to Defendants' statement of undisputed facts concerning Baffert's contracts); *Tyler*, 2023 WL 2173194, at *7 ("Where 'a party . . . fails to properly address another party's assertion of fact,' the Court may treat the fact as undisputed." (quoting Fed. R. Civ. P. 56(e)(2))). And there is no dispute about what the contracts say: Both allow CDI to suspend Baffert without notice and a hearing.

The plain language of the contracts establishes there was no due process violation. Where, as here, "the relationship between the parties is governed by contract," Dkt. 70 at 33, a due process claim is not even cognizable—the plaintiff's remedy is a breach-of-contract claim. Plaintiffs cannot deny that the thrust of their due process claim is a breach of contract. The contracts at issue allowed Baffert to race and occupy stalls at Churchill Downs, and Plaintiffs'

9

allegation is that Defendants have wrongfully prevented Baffert from continuing to race and occupy stalls at Churchill Downs. As the Sixth Circuit stated in *Kaminski v. Coulter*, "[o]ur case law makes clear that a claim for a due-process violation does not lie where the thrust of the plaintiffs' argument is simply breach of contract." 865 F.3d 339, 348 (6th Cir. 2017); *see also Superior Commc'ns v. City of Riverview*, 881 F.3d 432, 446 (6th Cir. 2018) (same).

Plaintiffs appear to recognize this general rule, but argue that "[t]he existence of a contract forecloses a due process claim only where the asserted right or property interest is derived from that contract." Opp. 14. But they cite no cases so holding. Although they cite cases that involved property interests derived from contract, *see id.*, the relevant question in those cases was not the basis for the property interest, but whether a state breach-of-contract claim was an available remedy. *See Kaminski*, 865 F.3d at 348 ("Because a due-process claim is predicated on the deprivation of a constitutionally protected interest *without due process of law*, the availability of a state breach-of-contract remedy defeats the due-process claim."). Here, this Court has already determined not only that a state breach-of-contract claim would be an *available* remedy, it would be a *more appropriate* remedy. *See* Dkt. 70 at 34 (Plaintiffs' due process claim "is better suited for a claim of breach of contract under Kentucky law"). Plaintiffs give the Court no reason to revisit its well-reasoned legal conclusion. *See Heid v. Aderholt*, 2022 WL 3025431, at *11 (S.D. Ohio Aug. 1, 2022) (preliminary injunction ruling in prior related case involving the same parties "regarding the same issues" was "highly persuasive authority"); *cf. Daunt v. Benson*, 999 F.3d 299, 308 (6th Cir. 2021) ("a fully considered ruling on an issue of law with the benefit of a fully developed record" in the preliminary injunction context is "the law of the case in any subsequent appeal" (quoting *Howe v. City of Akron*, 801 F.3d 718, 740 (6th Cir. 2015))).

10

Even if a due process claim were cognizable on these facts, it would be foreclosed by the contracts' plain language that does not entitle Baffert to notice and a hearing. Plaintiffs' argument that the contractual language does not establish that Baffert "waived" his rights presupposes its conclusion—*i.e.*, that Baffert *had* a constitutional right to notice and a hearing before CDI could suspend him. That conclusion is mistaken because, as this Court has already recognized, the contracts establish the process that Baffert was due. *See* Dkt. 70 at 33–34. Whether a "waiver" claim would be an "affirmative defense" Defendants must prove, Opp. 6–7, is beside the point. Defendants are arguing that Plaintiffs have "failed to demonstrate [an] element[] required for a due process violation," Dkt. 70 at 34, namely that he has not shown he was denied the process he was "due." Where, as here, the governing contracts *do not provide* for the process the plaintiff alleges was due, the plaintiff "has not made out a viable due-process claim." *Superior Commc'ns*, 881 F.3d at 445–46. This Court and the Sixth Circuit have each recognized that this question—the process required by contract—is not an affirmative defense or a matter of proving "waiver," but an essential element of a plaintiff's claim. *See* Dkt. 70 at 34; *Kaminski*, 865 F.3d at 347–48 (holding that plaintiffs' contract shows why their due process "claim fails on the merits"); *Ramsey v. Bd. of Educ. of Whitley Cnty.*, 844 F.2d 1268, 1273 (6th Cir. 1988) (similar).

Plaintiffs grasp at *J. Endres v. Northeast Ohio Medical University*, 938 F.3d 281 (6th Cir. 2019), to argue that "the Sixth Circuit has already rejected Defendants' premise that if a contract exists, it determines what process is due." Opp. 14. But that case is inapposite for the simple reason that there was no contract between the parties in that case. To be sure, *Endres*—which involved a school's suspension of a student for cheating—noted that, "[a]s a default, it is the Constitution, not a university handbook, that establishes what process is due." 938 F.3d at 300.

11

But unlike here, where there is no dispute that "Baffert *signed* the Rules and Conditions for Racing and Training and the Stall Application," Dkt. 70 at 33 (citing Dkts. 51-7, 51-8) (emphasis added), the student handbook in *Endres* was merely "provided" to university students, *J. Endres v. Ne. Ohio Med. Univ.*, 2018 WL 4002613, at *2 (N.D. Ohio Aug. 22, 2018), *aff'd in part, rev'd in part*, 938 F.3d 281 (6th Cir. 2019). There is no indication in *Endres* that the student "signed" the student handbook, as Plaintiffs wrongly assert in their opposition. Opp. 14. Moreover, even if there is a default presumption that the Constitution governs what process is due when it comes to student expulsions, there is no such presumption when it comes to commercial contracts. In fact, the opposite is true: the contract identifies the consideration each party will receive, and specifies the process under which it may be taken away. There is no basis for awarding Baffert contractual rights that the parties did not bargain for and that Defendants never agreed to give him. CDI had a contractual right to suspend Baffert from its properties without notice and a hearing, and nothing in the law authorizes rewriting the parties' contracts simply because Plaintiffs allege that CDI's lawful exercise of its contractual rights affected the value of Baffert's KHRC license.

The Court once again got it exactly right in its preliminary injunction order. "Based on the Rules and Conditions for Racing and Training and the Stall Application, Plaintiffs were not entitled to process before CDI could impose a suspension." Dkt. 70 at 34. For that reason as well, Plaintiffs' due process claim fails as a matter of law.

## CONCLUSION

The Court should grant summary judgment for Defendants on Plaintiffs' due process claim and dismiss the complaint with prejudice.

| | |
|---|---|
| Dated: April 18, 2023 | Respectfully submitted, |

| | |
|---|---|
| Chadwick A. McTighe<br>Jeffrey S. Moad<br>STITES & HARBISON, PLLC<br>400 W. Market Street, Ste. 1800<br>Louisville, KY 40202<br>(502) 587-3400<br>cmctighe@stites.com<br>jmoad@stites.com | /s/ Orin Snyder<br>Orin Snyder<br>Matt Benjamin<br>GIBSON, DUNN & CRUTCHER LLP<br>200 Park Avenue<br>New York, NY 10166<br>(212) 351-4000<br>osnyder@gibsondunn.com<br>mbenjamin@gibsondunn.com |
| Christine Demana<br>GIBSON, DUNN & CRUTCHER LLP<br>2001 Ross Avenue, Suite 2100<br>Dallas, TX 75201<br>(214) 698-3100<br>cdemana@gibsondunn.com | Thomas H. Dupree Jr.<br>GIBSON, DUNN & CRUTCHER LLP<br>1050 Connecticut Avenue NW<br>Washington, DC  20036-5306<br>(202) 955-8500<br>tdupree@gibsondunn.com |

## CERTIFICATE OF SERVICE

I certify that on April 18, 2023, I served this document on all counsel of record through CM/ECF.

/s/ Orin Snyder