UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

BOB BAFFERT, AND BOB BAFFERT        Plaintiffs
RACING STABLES, INC

v.                                  Civil Action No. 3:22-cv-123-RGJ

CHURCHILL DOWNS, INC., WILLIAM C.   Defendants
CARSTANJEN, and R. ALEX RANKIN

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Defendants Churchill Downs, Inc. ("CDI"), William C. Carstanjen ("Carstanjen"), and R. Alex Rankin ("Rankin" together with CDI and Carstanjen, "Defendants") moved for summary judgment. [DE 78]. Plaintiffs Bob Baffert ("Baffert") and Bob Baffert Racing Stables, Inc. (together with Baffert, "Plaintiffs") responded [DE 80] and Defendants replied [DE 82]. For the reasons below, Defendants' Motion for Summary Judgment [DE 78] is **GRANTED**.

**I.    BACKGROUND**

Baffert is a resident of California and a nationally recognized thoroughbred trainer. [DE 1 at 5]. He holds a license issued by the Kentucky Horse Racing Commission ("KHRC") to enter horses into races and apply for stall occupancy at all racetracks in Kentucky. [*Id.* at 6]. CDI is a for-profit corporation with its principal place of business in Louisville, Kentucky. [*Id.*]. CDI is in the business of horseracing, online wagering, and gaming entertainment. [*Id.* at 10]. Its flagship events include the Kentucky Derby and the Kentucky Oaks at its Churchill Downs Racetrack in Louisville. [*Id.* at 6]. Defendant Carstanjen is CDI's chief executive officer, and Defendant Rankin serves as chair of CDI's board of directors. [*Id.* at 7].

1

Plaintiffs entered Medina Spirit in the 147th running of the Kentucky Derby. [*Id.* at 19]. As a condition for entry, Baffert signed the Stall Application and the Rules and Conditions for Racing and Training. [DE 80 at 5212; DE 80-1 at 5230]. The Rules and Conditions for Racing and Training to abide by all "rules and regulations of the KHRC[.]" [DE 51-7 at 3487]. The Stall Application further provides that

> [a] violation of the rules or regulations of the KHRC or the conditions, rules and regulations of Churchill or the creation, in whole or in part, by Trainer of any condition that may interfere with the safe and efficient operation of its business . . . shall, in each case, subject this license to immediate revocation exercised at Churchill's sole and exclusive discretion, without any prior notice.

[DE 51-8 at 3490].

On May 1, 2021, Medina Spirt won the Kentucky Derby. [DE 1 at 2]. Following the race, pursuant to 810 KAR 8:060, a KHRC veterinarian took samples from Medina Spirit to test for prohibited substances. [*Id.* at 20]. On May 8, 2021, it became known to CDI that Medina Spirit had tested positive for betamethasone. [*Id.* at 20–21]. Betamethasone is labeled as a Class C prohibited substance by the KHRC. [*Id.* at 21].

On May 9, 2021, CDI issued a statement that CDI has come to understand that Medina Spirit's post-race sample violated the Commonwealth of Kentucky's equine medication protocols. [*Id.* at 22]. As a result, Baffert would be immediately suspended from entering any horses at Churchill Downs Racetrack for an indefinite period. [*Id.* at 22–23]. CDI cited the seriousness of the offense and noted that if the KHRC's findings were confirmed, then the results of the 2021 Kentucky Derby would be invalidated. [*Id.*].

On June 2, 2021, CDI announced that Baffert, and any trainer directly or indirectly employed by Plaintiffs, was suspended from entering horses in races or applying for stall occupancy at all CDI-owned racetracks for two years. [*Id.* at 23]. CDI reserved the right to extend

the period of its suspension. [*Id.*]. This decision followed the confirmation by Plaintiffs' attorneys that Medina Spirit had tested positive for betamethasone following the 2021 Kentucky Derby. [*Id.* at 23–24]. CDI's suspension makes Plaintiffs' horses ineligible for race entries and stabling privileges. [*Id.*]. The terms of CDI's suspension do not prevent Baffert from entering the grounds or limit his right of access as a member of the public to observe races on CDI properties. [*Id.* at 23–24].

On September 10, 2021, CDI instituted a new rule, which prohibits any horse trained by a person suspended from running at Churchill Downs from earning points to qualify for the Kentucky Derby or the Kentucky Oaks, even if those races were not held at CDI properties. [*Id.*]. Baffert alleges that he was the only trainer affected by the new rule and that CDI created the rule with the "singular aim of destroying Baffert's career." [*Id.* at 25–26]. He also alleges that CDI caused significant damage to Baffert's ability to conduct his customary business on a national scale. [*Id.* at 26].

After Medina Spirit tested positive for betamethasone, Plaintiffs were provided with notice from the KHRC of the suspected violation and informed of their right to an evidentiary hearing before the stewards. [*Id.*]. The Stewards hearing occurred on February 14, 2022. [*Id.* at 29]. The stewards recommended a 90-day suspension and disqualified Medina Spirit as the winner of the 2021 Kentucky Derby. [*Id.*]. The KHRC denied Plaintiffs' request for a stay of the suspension. [*Id.* at 29–30]. Plaintiffs' attempts to stay the suspension in Kentucky State Court were unsuccessful.[1] [DE 33-3; DE 33-4; DE 33-5].

On February 28, 2022, Plaintiffs sued in the Western District of Kentucky. [DE 1]. The Complaint articulates eight causes of action: Count 1 violation of 42 U.S.C. § 1983 against CDI

---

[1] Plaintiffs withdrew their first request for a preliminary injunction once they exhausted their attempts to stay the KHRC's 90-day suspension.

and Carstanjen and Rankin in their individual capacities, Count 2 unlawful exclusion against CDI, Counts 3 unlawful conspiracy in restraint of trade pursuant to 15 U.S.C. §§ 1, 15, and 26 against Defendants, Count 4 unlawful use of monopoly power pursuant to 15 U.S.C. §§ 2, 15, and 26 against Defendants, Count 5 tortious interference with contractual relations against CDI and Carstanjen, Count 6 tortious interference with prospective business relations against CDI and Carstanjen, Count 7 asks for a declaratory judgment against Defendants, and Count 8 asks for a preliminary and permanent injunction. [*Id.*].

On March 1, 2022, Plaintiffs filed their first motion seeking injunctive relief from CDI's suspension. [DE 5]. Plaintiffs also moved to expedite briefing to secure a preliminary injunction before the 2022 Kentucky Oaks and Kentucky Derby. [DE 6]. The Court promptly scheduled an evidentiary hearing for April 15, 2022. [DE 32]. On April 4, 2022, Plaintiffs moved to withdraw their motion for a preliminary injunction. [DE 33]. Plaintiffs explained that the stewards had imposed a 90-day suspension independent of CDI's that would begin on April 4. [*Id.* at 1125]. Plaintiffs sought judicial relief in Franklin County Circuit Court and the Kentucky Court of Appeals. [*Id.*]. However, neither court would stay the KHRC's suspension. [*Id.*]. Because Plaintiffs would have to resolve the KHRC's suspension independently from CDI's suspension to race in the 2022 Kentucky Oaks and Kentucky Derby, Plaintiffs decided to withdraw their first motion without prejudice. [*Id.*]. The KHRC's suspension expired on July 2, 2022. [*Id.*].

On December 15, 2022, Plaintiffs renewed their motion for a preliminary injunction. [DE 41]. The Court held an evidentiary hearing on February 2 and 3, 2023 regarding Plaintiffs' Renewed Motion for a Preliminary Injunction. [DE 65]; Feb. 2–3, 2023, Hrg. Tr., 1:1–2. Following Plaintiffs' suspension and after the commencement of this action, Baffert conceded that he has "raced horses all around the world with enormous success." Hrg. Tr., 182:1–16. Baffert

4

has used his Kentucky trainer's license to win more than $1 million at Keeneland during his suspension. [DE 53-42].[2]

The Court denied Plaintiffs motion for a preliminary injunction and dismissed Plaintiffs' claims for unlawful exclusion, unlawful conspiracy in restraint of trade, unlawful use of monopoly power, tortious interference with contractual relations, and tortious interference with prospective business relations. [DE 70]. Defendants now move for summary judgment on Plaintiffs' only remaining claim—breach of due process. [DE 78].

## II. STANDARD

Summary judgment is required when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of specifying the basis for its motion and showing the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the nonmoving party must produce specific facts showing a material issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Factual differences are not considered material unless the differences are such that a reasonable jury could find for the party contesting the summary judgment motion. *Id.* at 252.

The Court must view the evidence and draw all reasonable inferences in a light most favorable to the nonmoving party. *Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000). But the nonmoving party must do more than show some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party must present specific facts showing that a genuine factual issue exists by

---

[2] Defendants provided a detailed breakdown of Baffert's wins at Keeneland during his suspension, which include $1,211,937 in purse money. [DE 78 at 5179]. In their reply, Defendants noted two additional races Baffert's horses won at Keeneland. [DE 82 at 5410]. These races resulted in another $133,500 in winnings and occurred after Defendants moved for summary judgment. [*Id.*].

5

"citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" *Shreve v. Franklin Cnty., Ohio*, 743 F.3d 126, 136 (6th Cir. 2014). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Liberty Lobby*, 477 U.S. at 252.

Rule 56(c)(1) requires that a "party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

A party may "move for summary judgment 'at any time' before the close of discovery," *Health & Wellness Lifestyle Clubs, LLC v. Raintree Golf, LLC*, 808 F. App'x 338, 346 (6th Cir. 2020) (citing Fed. R. Civ. P. 56(b)), including "before [there has been] any opportunity for discovery in the case," *Troxell v. McCreary Cnty. Det. Ctr.*, No. 605-31-DCR, 2006 WL 897186, at *2 (E.D. Ky. Apr. 4, 2006). When a party moves for summary judgment before the close of discovery, the court may rely on "its findings from the preliminary injunction hearing," *Leary v. Daeschner*, 349 F.3d 888, 901 (6th Cir. 2003), and should grant the motion if the nonmoving party cannot "show how further discovery would enable [it] to rebut the movant's showing of an absence of a genuine issue of fact," *Via The Web Designs, L.L.C. v. Beauticontrol Cosms., Inc.*, 148 F. App'x 483, 489 (6th Cir. 2005).[3]

---

[3] Plaintiffs briefly argue that Defendants have misrepresented the caselaw to suggest that the Court may deny discovery solely because it previously conducted a preliminary injunction hearing. [DE 80 at 5231]. Rule 56 permits a party to move for summary judgment before the close of discovery. The Court is permitted to rely on its findings from the preliminary injunction hearing, see *Leary*, 349 F.3d at 901, but the basis for the motion is permissible under Rule 56. Accordingly, the Court finds that Defendants did not misrepresent the caselaw.

### III. ANALYSIS

To plead a due process claim, a party must allege: "(1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process." *West v. Ky. Horse Racing Comm'n*, 972 F.3d 881, 890 (6th Cir. 2020) (quoting *Fields v. Henry Cnty., Tenn.*, 701 F.3d 180, 185 (6th Cir. 2012)). Defendants argue that Plaintiffs cannot prove the first or third element of their due process claim. [DE 78 at 5174]. Defendants assert that Plaintiffs' claim must fail because (1) they cannot prove the deprivation of a constitutionally protected property interest and (2) they cannot prove Baffert was entitled to a pre-deprivation hearing.[4] [DE 78 at 5174]. In response, Plaintiffs contend that Baffert has an interest in the continued, uninterrupted enjoyment of his Kentucky-issued license to race horses in Kentucky. [DE 80 at 5207]. Plaintiffs argue that the protected property interest in Baffert's license is derived from an independent source of state law. [*Id.* at 5208]. Next, they argue that the United States Constitution establishes the minimum procedural protections that safeguard that protected property interest. [*Id.*].

#### A. Property Interest

Defendants first argue that the first element of Plaintiffs' due process claim must fail because Plaintiffs cannot prove that Baffert's Kentucky trainer's license was rendered valueless by CDI's suspension. [DE 78 at 5182]. Plaintiffs contend that Baffert's license was rendered valueless on the days where trainers in Kentucky could only use their license at CDI. [DE 80 at 5216].

---

[4] Defendants treat CDI as a state actor for the purposes of their Motion for Summary Judgment. [DE 78]. Although the Court has not ruled on whether CDI is a state actor, the Court will treat it as such for the purposes of resolving Defendants' motion.

The Supreme Court has held that state-issued licenses create a property interest "sufficient to invoke the protection of the Due Process Clause." *Barry v. Barchi*, 443 U.S. 55, 64 (1979). Where "[t]here is no allegation that [a party's] license will be actually suspended or revoked," the plaintiff must prove an "indirect loss in the value of [his] license." *Med Corp. v. City of Lima*, 296 F.3d 404, 412–13 (6th Cir. 2002) "[C]ourts have typically recognized indirect injuries to the value of property as constitutional 'deprivations' only 'when such indirect injuries *effectively render the property valueless.*'" *Id.* at 413 (quoting *Wells Fargo Armored Serv. Corp. v. Georgia Pub. Serv. Comm'n*, 547 F.2d 938, 941 (5th Cir. 1977)).

Here, the undisputed evidence demonstrates that Baffert's license is not valueless. While suspended from racing at CDI racetracks, Baffert conceded that he has "raced horses all around the world with enormous success." Hrg. Tr., 182:1–16. Plaintiffs used Baffert's Kentucky trainer's license to win more than $1 million at Keeneland—a racetrack in Lexington, Kentucky—while suspended from racing at CDI's tracks. [DE 53-42]. Defendants have cited almost a dozen races at Keeneland where Plaintiffs' horses won up to $540,000 per races. [DE 78 at 5179; DE 82 at 5410]. Plaintiffs do not dispute this record.[5] [DE 80]. Baffert's license was not suspended or revoked by the issuing entity, meaning he must demonstrate an indirect loss in the value of his Kentucky trainer's license. *See Med Corp.*, 296 F.3d at 412–13. For Plaintiffs to demonstrate that this indirect injury amounted to a violation of due process, they must prove that Baffert's license was rendered valueless. *See id.* The Court cannot find that Baffert's Kentucky trainer's license was rendered valueless when he used it to win over $1 million racing horses in the Commonwealth. [DE 78 at 5179; DE 82 at 5410]. Beyond racing, Plaintiffs could continue to use Baffert's license

---

[5] Plaintiffs contend that Defendants base part of their argument on the fact that Plaintiffs have raced outside Kentucky. [DE 80 at 5218]. The Court's analysis is limited to Plaintiffs' activities and the value of Baffert's trainer's license inside the Commonwealth.

to train horses [DE 80-1 at 5228], enter his horses in races [*Id.*], and apply for stall occupancy [DE 1 at 6]. Accordingly, Plaintiffs cannot satisfy the first element of their due process claim because Baffert's Kentucky trainer's license was not rendered valueless by CDI's suspension. *See Med Corp.*, 296 F.3d at 413.

Although Plaintiffs have not contended that Baffert's license was rendered valueless for the entire suspension, they do argue that it was valueless for limited intervals during the suspension. [DE 80 at 5209]. In Kentucky, only one racetrack is permitted to conduct thoroughbred racing on any particular day. [DE 80 at 5209]. Plaintiffs point to blocks of dates ranging from five to 159 days where they were unable to race because non-CDI racetracks were holding races. [*Id.*]. Plaintiffs argue that this is equivalent to the state depriving an owner of their home for five days a week. [*Id.* at 5217]. Under this hypothetical, they assert that the home may have value on two days, which would not render it valueless, but must still result in a due process violation because the government deprived the owner of its use. [*Id.*].

Nonetheless, Plaintiffs' argument amounts to a false analogy that distorts the caselaw. What Plaintiffs describe is a *direct* deprivation of a property interest. A direct deprivation is one that directly affects the value of an existing property interest, such as a when the government suspends a state-issued license. *See, e.g.*, *Bell v. Burson*, 402 U.S. 535, 538–39 (1971). An indirect deprivation, as is present here, is one that "does not directly affect the value of the existing [license]." *See, e.g.*, *Wells Fargo Armored Serv. Corp.*, 547 F.2d at 940 (finding the state's grant of a certificate to the plaintiff's competitor, which increased competition and devalued the plaintiff's certificate, was an indirect deprivation). Plaintiffs have not alleged that CDI suspended Baffert's Kentucky trainer's license but that CDI's suspension from CDI racetracks devalued their

9

license. [DE 1]. Therefore, Plaintiffs allege an indirect deprivation of a property interest. *See Wells Fargo Armored Serv. Corp.*, 547 F.2d at 940.

The cases cited in support of Plaintiffs argument are inapposite because they involve direct deprivations of a property interest. The deprivation in *Barry* involved the direct suspension of a trainer's license by the New York State Racing and Wagering Board. *See* 443 U.S. at 57–59. Plaintiffs also cite *Fuentes v. Shevin*, 407 U.S. 67, 86 (1972). [DE 80 at 5214]. Again, *Fuentes* involved the direct deprivation of a property interest through state laws that "authoriz[ed] the summary seizure of goods or chattels in a person's possession under a writ of replevin." 407 U.S. at 69–70.

Plaintiffs' argument is directly contradictory to the Sixth Circuit's precedent. In *Med Corp.*, the Sixth Circuit held the plaintiff's license to operate an ambulance service was not rendered valueless when the plaintiff could no longer get service calls from the city because it could still get service calls from private nursing homes and the like. *See* 296 F.3d at 413. And in *Hasanaj v. Detroit Public Schools Community Dist.*, 35 F.4th 437, 453 (6th Cir. 2022), the Sixth Circuit held that a teacher was not deprived of his teaching license when his contract was terminated because he remained free to obtain employment with another Michigan school district. Adopting Plaintiffs' approach would run afoul of these cases because, like Plaintiffs, Med Corp. and Hasanaj were both able to extract some value from their license. Moreover, Plaintiffs have not cited a case that would support breaking up CDI's suspension into limited periods of time and removing the dates where Baffert's license had value. [DE 80].

Because Defendants moved for summary judgment prior to discovery, the Court may grant the motion if Plaintiffs cannot show that further discovery would allow them to rebut Defendants' "showing of an absence of a genuine issue of fact." *Via The Web Designs, L.L.C.*, 148 F. App'x

at 489. Plaintiffs' argument about the value of Baffert's trainer's license does not rely on additional discovery, but instead, on a novel interpretation of the law. [DE 80 at 5213–16]. To the extent Plaintiffs would need discovery to prove Baffert's trainer's license was valueless, that information was within Plaintiffs' possession and should have been divulged to the Court in their response. *See Emmons v. McLaughlin*, 874 F.2d 351, 357 (6th Cir. 1989). The Court considered Plaintiffs' response, its exhibits, and information gathered from the preliminary injunction hearing. The Court finds that additional discovery would not create a genuine issue of fact regarding the value of Baffert's trainer's license. *See Via The Web Designs, L.L.C.*, 148 F. App'x at 489.

Defendants have satisfied their burden to prove that there is no genuine issue of material fact regarding the value of Baffert's trainer's license. *See Celotex Corp.*, 477 U.S. at 322. Plaintiffs' indirect deprivation resulting from CDI's suspension did not render Baffert's trainer's license valueless. *See Med Corp.*, 296 F.3d at 413. Therefore, Plaintiffs cannot demonstrate that they were deprived of a property interest—a necessary element of their due process claim. *See West*, 972 F.3d at 890. Plaintiffs have failed to produce specific evidence creating a genuine issue of material fact that would allow a reasonable jury to find in their favor at trial. *Liberty Lobby, Inc.*, 477 U.S. at 247–48. Accordingly, Defendants' Motion for Summary Judgment [DE 78] is **GRANTED**. Because Plaintiffs cannot prevail on the first element of their due process claim, the Court will not continue to examine additional arguments.

## IV. CONCLUSION

For all these reasons, and the Court being otherwise sufficiently advised, **IT IS ORDERED** as follows:

(1) Defendants' Motion for Summary Judgment [DE 78] is **GRANTED**; and

(2) Defendants' Motion to Stay Discovery [DE 84] is **DENIED as MOOT**.

Rebecca Grady Jennings, District Judge
United States District Court

May 24, 2023

12